# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-1376

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Christopher Austad, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: November 13, 2007
Filed: March 5, 2008

———————

Before RILEY, BOWMAN, and SMITH, Circuit Judges.

———————

RILEY, Circuit Judge.

Christopher Austad (Austad) pled guilty to mailing threatening communications in violation of 18 U.S.C. § 876(c). After calculating a sentencing Guidelines range of 37 to 46 months imprisonment, the district court[1] sentenced Austad to 84 months imprisonment. Austad appeals, arguing the sentence is unreasonable, and that the district court failed to consider Austad's history and circumstances. We affirm.

———————

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

## I. BACKGROUND

In March of 2006, Austad sent a letter from his prison cell at the South Dakota State Penitentiary.[2]  The letter was addressed to United States District Court Judge Richard Battey, and consisted of exceptionally graphic threats to Judge Battey. Austad stated the letter was a response to Judge Battey's sentencings of "a couple of buddies of" Austad.  Among other threats, Austad claimed he would bite off Judge Battey's fingers, shoot him in the knees and elbows to disable him, eat portions of his nose and face, puncture his eyes with hot needles, and sodomize him using a metal rod with a razor blade welded to it.  Austad further threatened to shoot Judge Battey in the back of the head "assassination style."  Finally, Austad threatened to "cut [Judge Battey] up and eat what [Austad could] and burn the rest of [Judge Battey's] body to ashes."  Judge Battey and his wife felt threatened by the letter, and took steps to improve their home security system.

When later confronted by federal agents, Austad confirmed he drafted the letter, and expressed his intent and willingness to carry out the threat.  Austad claimed he could cause harm to Judge Battey even from prison, and stated he had a murder-for-hire plan in place.  The plan, according to Austad, consisted of making a phone call to a person outside of prison, and making a pre-arranged coded noise.  Austad said the recipient of the phone call would then contact another person who would carry out the attack for $2,000.

Austad entered a plea of guilty to a charge of mailing threatening communications in violation of 18 U.S.C. § 876(c).  In recommending the offense level, the presentence report (PSR) calculated a base offense level of 12, and a number of increases and reductions, for a total offense level of 21.  The PSR assessed a criminal history category of V.  Combining the offense level of 21 and the criminal

---

[2]A few days later, Austad wrote a letter to Senator Tim Johnson, threatening to kill both Senator Johnson and President George W. Bush.

history category of V, the PSR recommended a Guidelines range of 70 to 87 months imprisonment.  In arriving at the offense level of 21, the PSR included a 6 level enhancement pursuant to United States Sentencing Guidelines Manual (U.S.S.G.) § 2A6.1(b)(1) (2006),[3] for the specific offense characteristic of "conduct evidencing an intent to carry out [threatening communications]."  Austad objected to this enhancement.

At sentencing, the district court declined to impose the § 2A6.1(b)(1) enhancement.  The district court explained application note 1 of § 2A6.1(b)(1) expressly states, for the enhancement to apply, only conduct that transpired before or during the offense may be considered.[4]  The district court noted Austad's statement to the federal agents, evidencing an intent to carry out the threat, was not made until after Austad was caught.  The district court recognized the Guidelines cannot envision every manner in which offense characteristics may occur, and stated, "frankly I think the sentencing commission is wrong on that limitation on [§ 2A6.1(b)(1)], but that's what it says, so I am applying the guidelines as what the guidelines say."  The district court thus granted Austad's objection to the application of § 2A6.1(b)(1), struck the 6 level § 2A6.1(b)(1) enhancement, and utilized an offense level of 15 and a Guidelines range of 37 to 46 months imprisonment.  However, the district court announced it would still consider Austad's post-offense conduct, evidencing the intent to carry out the threat, under the court's overall consideration of the purposes and goals of sentencing pursuant to 18 U.S.C. § 3553(a).

---

[3]Austad was sentenced pursuant to the 2006 version of the manual.  All references to the Sentencing Guidelines thus refer to the 2006 edition.

[4]The application note provides, "In determining whether subsection[] (b)(1) . . . appl[ies], the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense . . . ."  U.S.S.G. § 2A6.1(b)(1), cmt. n.1.

In imposing its sentence, the district court did consider Austad's post-offense statement in determining a § 3553(a) variance. The district court also acknowledged Austad had "for the first time, shown repentance . . . ." The district court further considered Austad's significant disciplinary history while incarcerated, including "twelve major write-ups in seven months, some of a violent nature in the penitentiary." The district court emphasized "a need to protect the public from future crimes of [Austad]," and explained it was "rel[ying] heavily upon that [consideration] in reaching what it believes to be an appropriate sentence." Thus, the district court "[wound] up looking at the same range as if the 6 points [for the § 2A6.1(b)(1) enhancement] were not deducted." The district court thus imposed a sentence of 84 months imprisonment.

Austad appeals, arguing the sentence is unreasonable, and the district court failed to consider Austad's history and circumstances.

## II.  DISCUSSION

"Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." Gall v. United States, 552 U.S. ___, 128 S. Ct. 586, 597 (2007). We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. Next, if "the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. "When conducting this review, the [appellate] court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Id. "If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply

a presumption of reasonableness." Id. (citation omitted). On the other hand, "if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness." Id. We "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id.

## A.     Reasonableness of the Sentence

Austad relies heavily on past Eighth Circuit cases holding extraordinary variances from the Guidelines range require extraordinary circumstances. See, e.g., United States v. Kendall, 446 F.3d 782, 785 (8th Cir. 2006) (citing United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005). Because the district court imposed an extraordinary upward variance (84 months, after a calculated Guidelines range of 36 to 46 months), Austad argues his sentence can only be justified by extraordinary circumstances.

Before Gall, Austad's sentence might have presented a closer issue, particularly in light of cases in which relatively similar conduct received a lighter sentence than that imposed on Austad. See, e.g., United States v. Myers, 503 F.3d 676, 680 (8th Cir. 2007) (involving a sentence of 60 months imprisonment for mailing a death threat to a federal judge).[5] However, Gall overruled our "extraordinary circumstances" analysis. See Gall, 128 S. Ct. at 595-96. In light of Gall, we must recognize, although it is "uncontroversial that a major departure should be supported by a *more significant* justification than a minor one," id. at 597 (emphasis added), the justification need not be precisely proportionate. Id. at 594-95 (expressly rejecting this court's requirement of "extraordinary circumstances" as well as any mathematical proportionality assessment). The Supreme Court in Gall does conclude that "a district judge must

---

[5]We note, however, "[a] sentence is not unreasonable simply because it creates some disparity between sentences," Myers, 503 F.3d at 686 (citation omitted), and Myers represented "an unusual case with an unusual defendant." Id. at 687 (citation omitted).

give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion . . . an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Id. at 594.

Comparing Austad's sentence to the one imposed in Myers, it becomes clear the district court, in sentencing Austad, supported the upward variance with sufficient and proportionate justifications. The district court noted it could not ignore Austad's offense conduct. Austad's threats were extreme. The district court further considered Austad's significant disciplinary record, including "twelve major write-ups in seven months, some of a violent nature in the penitentiary." Additionally, the district court noted the likelihood Austad would continue to re-offend by threatening other members of society, and the court announced it was "rel[ying] heavily" upon this consideration.[6] The district court correctly recognized the Guidelines do not always account for every factual circumstance which could arise in a given case. As the Supreme Court recently re-explained in a different context, although the district court must first properly calculate the Guidelines range, and consider this calculation in determining an appropriate sentence, the district court may consider whether an in-

---

[6]Austad also takes issue with the district court's reliance on his likelihood to re-offend, arguing Austad had no ability to carry out his threats, because he had no access to a telephone, and no money to be able to pay someone on the outside to commit the threatened acts. First, this fails to recognize Austad was not convicted of actually harming Judge Battey, but of *threatening* him. Second, the characteristics noted by the district court indicate a significant likelihood that, given an opportunity to do so, Austad will continue to make threats against members of society. Whether or not Austad has any ability to *carry out* the threat, the threat itself causes emotional turmoil in the lives of those threatened, including their families, and is, therefore, itself a crime. As this case amply demonstrates, Austad committed this crime even while incarcerated. It is not unreasonable to conclude such threats would occur, and potentially with significantly greater frequency, if Austad were not in prison. The district court, therefore, did not err in determining a harsher sentence would help promote the goal of protecting society.

Guidelines sentence fails appropriately to serve the objectives of sentencing.  See Kimbrough v. United States, 552 U.S. ___, 128 S. Ct. 558, 564, 574-75 (2007).

In sentencing Austad, the district court calculated the sentencing range by employing the language of the application note to § 2A6.1(b)(1).  This resulted in a shorter Guidelines range.  However, had Austad expressed his intent to carry out the threat contemporaneously with making the threat, Austad could have been subject to the 6 level increase.  See U.S.S.G. § 2A6.1(b)(1), cmt. n.1.  The district court determined a similar increase was warranted pursuant to § 3553(a) in order to promote the goals of deterrence and "particularly to protect the public from further crimes of Mr. Austad."  The district court's conclusion that Austad's conduct was just as bad as that encompassed by § 2A6.1(b)(1), and thus deserving of a similar sentence, is logical and reasonable.

Finally, Austad argues the district court failed to consider properly the § 3553(a) factors by not considering Austad's history and circumstances, including Austad's history of mental illness.  First, we note the district court heard Austad's attorney explain Austad's history and circumstances.  "[W]e do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered."  United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006) (citation omitted).[7]  Second, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  Gall, 128 S. Ct. at

---

[7]Austad's contention that his mental illness demonstrates he is unlikely to ever carry out his threats cuts both ways.  On one hand, Austad's mental illness may evidence nothing more than an extreme impulsiveness and pattern of self-destructive behavior.  On the other hand, Austad's mental illness may also evidence a kind of impulsiveness which might compel him to act upon these threats at some point.  In any event, the district court is in a much better position to make such determinations, and we are not free to substitute our judgment for that of the district court when the district court's determinations are not unreasonable.  See Gall, 128 S. Ct. at 597.

597.  As the Supreme Court reminds us, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." Id. (citation omitted).  Given these considerations, we cannot say the district court abused its discretion in sentencing Austad.  Even if Austad's sentence were considered "unusually harsh," the district court explained the sentence with "sufficient justifications." See id. at 594.

## III.   CONCLUSION

Austad's sentence is affirmed.

_____