# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1650

_____

United States of America

*Plaintiff - Appellee*

v.

Aaron Scott Johnson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: March 18, 2016
Filed: May 4, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Aaron Johnson of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, making false statements to influence the United States Department of Agriculture (USDA) in violation of 18 U.S.C. §§ 2 and 1014, and making false statements to law enforcement in violation of 18 U.S.C. § 1001. The

district court[1] sentenced Johnson to 48 months in prison after applying sentencing enhancements based on obstruction of justice and the total loss amount. Johnson appeals his convictions and sentence. We affirm.

## I.

Johnson and his brother were potato farmers in North Dakota. The Risk Management Agency of the USDA administered a crop insurance program by which the Johnsons obtained insurance coverage for shortfalls between their annual potato production and a production baseline. Their insurance policies also covered damage from "soft rot" (the watery breakdown of the inner potato) to their stored crops. The Farm Service Agency of the USDA also administered a crop disaster program authorizing payments to farmers for crop losses sustained during particular years. Each of these federal programs covers only losses resulting from certain natural occurrences, not from intentional acts by an insured.

In November 2006 the Johnsons filed notices of loss under their insurance policies. An adjuster inspected Aaron Johnson's stored potatoes at a warehouse near Cooperstown, North Dakota (the Cooperstown warehouse) and determined that soft rot had caused a total loss of that crop. Johnson and his wife also later applied for disaster relief based on that loss. In his insurance claim and disaster relief application, Johnson certified that his potato crop had been damaged by naturally occurring soft rot. The government ultimately paid out several hundred thousand dollars in indemnity and disaster relief.

The USDA investigated Johnson for fraud, suspecting he had intentionally damaged the potatoes at the Cooperstown warehouse. Johnson was later indicted on

[1] The Honorable Ralph R. Erickson, Chief United States District Judge for the District of North Dakota.

one count of conspiracy to defraud the United States, 18 U.S.C. § 371, two counts of making a false statement to influence the USDA, id. §§ 2, 1014, and two counts of making a false statement to law enforcement, id. § 1001. The evidence at trial established the following facts.

Johnson's employee Leo Borgen had served as a paid informant in the government's investigation of Johnson. Borgen testified that at Johnson's direction in 2006 he had sprayed the potatoes at the Cooperstown warehouse with Rid-X and Flush, chemicals used to break down solids in septic systems. Johnson had also instructed him to add frozen potatoes to the stored potato piles and to turn up the heat in the warehouse. As a result, the potatoes began to rot. Borgen further testified that Johnson had directed him to damage prior potato crops by similar means. On cross examination, Borgen admitted that he had a long criminal history and that the prosecution had dropped charges against him in exchange for his testimony against Johnson. He also admitted that he had "double crossed" investigators by revealing to Johnson that he was a government informant.

Other witnesses testified that Johnson had told them he intentionally damaged his crop using Rid-X and frozen potatoes. The government also introduced evidence showing several large purchases of Rid-X and Flush at hardware stores in Grand Forks and Cooperstown, North Dakota shortly before Johnson submitted his notice of loss. One of those purchases had been made with Johnson's credit card. The government also introduced expert testimony that application to potatoes of septic products, frozen potatoes, and heat would accelerate rotting. The government's expert also explained that the damage to the stored potatoes could not have resulted from an infection caused by the dirt floor of the warehouse as Johnson claimed.

The jury convicted Johnson on all counts. At sentencing, the district court calculated a base offense level of seven and applied a fourteen point enhancement for a total loss amount of between $400,000 and $1 million. The court also added two

points each for Johnson's role as a leader and for obstruction of justice based on two conversations between Johnson and Borgen. First, the court found that Johnson had attempted to induce Borgen to testify favorably during a phone call in which he said he planned to sue the federal government for $30 million and would "remember [his] friends" during that lawsuit. The court also found that the two men had staged a conversation they knew the government was monitoring, intending to obstruct the government's investigation. A total offense level of 25 was calculated, and Johnson was sentenced to 48 months after a downward variance was applied. Johnson appeals the sufficiency of the evidence supporting his conviction, as well as the district court's application of sentencing enhancements based on obstruction of justice and the total loss amount.

## II.

We review a challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict, accepting all reasonable inferences supporting it, and affirming "if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." United States v. Scofield, 433 F.3d 580, 585 (8th Cir. 2006). The parties agree that the key issue on appeal is whether sufficient evidence showed that Johnson had intentionally damaged his potato crop before certifying that naturally occurring soft rot had caused the loss.

We conclude that sufficient evidence supported Johnson's convictions. Borgen testified that he had applied Rid-X, Flush, frozen potatoes, and heat to the Cooperstown potato crop at Johnson's direction, intending to damage the crop. Johnson argues that no reasonable jury could believe Borgen's testimony given his criminal history, his incentives to testify, and his attempt to "double cross" investigators, but credibility assessments "are virtually unreviewable on appeal." United States v. Keys, 721 F.3d 512, 520 (8th Cir. 2013). Moreover, while "witness

testimony does not need to be corroborated," id. at 519 (alterations omitted), multiple other witnesses similarly testified that Johnson had told them that he intentionally damaged his crops. The evidence also showed that Johnson had purchased large quantities of Rid-X shortly before filing his claim, and expert testimony rebutted his explanation that his potatoes had been damaged by an infection caused by the dirt floor of the warehouse. On this record a reasonable juror could find that Johnson intentionally damaged the potatoes at the Cooperstown warehouse. We therefore affirm Johnson's convictions.

## III.

Johnson also argues that the district court erred in applying sentencing enhancements based on obstruction of justice and the total loss amount. "We review interpretation of the Sentencing Guidelines de novo and a district court's application of the Guidelines to the facts for clear error." United States v. Rutherford, 599 F.3d 817, 820 (8th Cir. 2010). We conclude that the district court did not err in applying either enhancement.

Sentencing guideline § 3C1.1 instructs courts to apply a two point enhancement if a defendant "threaten[s], intimidat[es], or otherwise unlawfully influenc[es]" a witness or attempts to do so. U.S.S.G. § 3C1.1. cmt. n. 4(A). Here, the evidence at sentencing showed that Johnson had told Borgen that he would "help [him] anyway" he could, that they would remain friends "[t]hrough thick and thin," and that after he sued the federal government for $30 million dollars he would "remember [his] friends." Johnson argues that these statements were "nonsensical" and that Borgen could not have expected Johnson to compensate him for favorable testimony. We conclude, however, that the district court did not clearly err in interpreting these statements as an attempted bribe, particularly because Johnson knew that Borgen had been cooperating with the government and could have expected him to testify at trial. See, e.g., United States v. Thompson, 210 F.3d 855,

861–62 (8th Cir. 2000) (finding no clear error in district court's interpretation of defendant's statements and gestures as attempts to influence witnesses). We therefore affirm the district court's application of this enhancement.

We also affirm the district court's application of a 14 point enhancement based on a total loss amount of between $400,000 and $1 million. See U.S.S.G. § 2B1.1(b)(1)(H).[2] Johnson had argued that this enhancement should apply instead of the government's proposed 16 point enhancement, and our court has explained that a "defendant cannot complain that the district court gave him exactly what his lawyer asked." United States v. Campbell, 764 F.3d 874, 878 (8th Cir. 2014) (internal quotation marks omitted). Johnson asked the district court to apply this enhancement, and we thus need not review his claim of error on appeal. Id. at 879. We affirm his sentence.

IV.

For these reasons we affirm Johnson's convictions and sentence.

_____

---

[2] We apply the 2014 guidelines which were in effect when Johnson was sentenced. See 18 U.S.C. § 3553(a)(4)(A)(ii).