FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 1, 2022**

Christopher M. Wolpert
Clerk of Court

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIO LAIVEL THOMAS,

Defendant - Appellant.

No. 22-6041
(D.C. No. 5:20-CR-00212-PRW-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Mario Laivel Thomas pleaded guilty to two counts of being a felon illegally in

possession of a firearm. *See* 18 U.S.C. § 922(g)(1). The district court departed

and/or varied upward substantially from the advisory range set out in the United

States Sentencing Guidelines. Thomas's counsel filed a timely notice of appeal.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Thereafter, however, counsel filed in this court a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting they could find no meritorious basis for appeal and moving to withdraw as counsel. For those reasons set out below, this court **grants** counsel's motion to withdraw and **dismisses** this appeal.

On May 11, 2020, local Oklahoma police officers were dispatched to a convenience store based on a report of a vehicle hitting a gas pump and fleeing the scene. An officer initiated a traffic stop near the store and made contact with Thomas, the driver of the vehicle. When Thomas exited the vehicle, a firearm fell from his lap onto the ground. Officers detained Thomas and confiscated a loaded .380 Bersa Thunder. An officer cleared the weapon of one chambered round of ammunition and a six-round magazine. Officers located a second seven-round magazine in the vehicle's driver's seat. Thomas, who appeared lethargic, was "drooling" from the mouth, drifting in and out of consciousness, and unable to answer any of the officers' questions. Thomas was transported to the hospital for further observation. A juvenile passenger, who also appeared to be under the influence of drugs, was also inside of the vehicle. She stated she and Thomas had taken Percocet prior to arriving at the convenience store.

On August 9, 2020, officers were dispatched to a residence based on a reported disturbance involving a firearm and shots fired. It was noted that people were screaming for help. As officers approached the scene, they observed two male subjects and a female subject fighting in the roadway. When Thomas, one of the male subjects, noticed the officers, he fled the scene towards a residence.

2

As officers exited their patrol cars, one of the subjects who had been fighting, P.Y., yelled that Thomas had a firearm. Officers retreated until additional units arrived, including air support and a K-9 unit, noting there were several other subjects outside of the property as well as a pit bull. P.Y. told the officers the residence was occupied by his mother, R.D. P.Y. had come to visit R.D. and, as he approached the driveway, Thomas, his mother's domestic partner, started a physical confrontation with him. P.Y. stated he fought back and the fight continued into the roadway. According to P.Y., Thomas fired at least two rounds toward him.

Additional officers arrived on the scene and searched the immediate area of R.D.'s residence. After numerous verbal commands, Thomas exited a travel trailer in R.D.'s backyard and surrendered. Officers searched the area and located two spent .380 shell casings in the roadway. R.D. and Thomas consented to a search of the premises. Officers located a black .380 caliber Smith and Wesson M & P handgun that was loaded with four rounds of .380 ammunition. A check of the firearm's serial number confirmed it had been reported stolen. Thomas was *Mirandized* and agreed to speak with one of the officers. After initially denying that the gun belonged to him, Thomas admitted he possessed the firearm during the altercation and that it had "went off." He stated he was defending himself with the firearm because P.Y. attacked him and he did not understand why he would be in trouble.

After a federal grand jury returned a superseding indictment charging Thomas with, inter alia, two § 922(g)(1) counts based on the events recounted above, Thomas entered a plea agreement that disposed of the case. In exchange for pleading guilty to the two § 922(g)(1) counts and waiving the overwhelming majority of his appellate rights, the government agreed to dismiss the original indictment, dismiss an additional § 922(g)(1) count, and recommend that Thomas's total offense level be adjusted downward based on acceptance of responsibility. And, most importantly, the state of Oklahoma agreed that any sentence it obtained in parallel state-court criminal proceedings involving Thomas would run concurrently with any sentence imposed in this case. The district court conducted a change of plea hearing and concluded Thomas had knowingly, voluntarily, and intelligently agreed to plead guilty. Accordingly, the district court accepted Thomas's plea and found him guilty of the relevant § 922(g)(1) charges. Thomas's criminal history category VI, when combined with his total offense level of 23, resulted in an advisory sentencing range of 92 to 115 months' imprisonment. The PSR further noted, however, that an upward variance or departure would be appropriate to account for Thomas's extraordinarily extensive and violent criminal history and his use of a firearm in the commission of one of the § 922(g)(1) convictions. Thomas filed objections to portions of the PSR noting the possibility of an upward departure and/or variance. Thomas also addressed the propriety of an upward variance or departure in his sentencing memorandum.

4

The district court held a sentencing hearing on March 2, 2022. After listening to extensive arguments from Thomas's counsel, the district court concluded a sentence of 180 months' imprisonment was appropriate, whether imposed as an upward variance or upward departure. The district court focused on the following in reaching that conclusion: (1) Thomas's extensive and violent criminal history, a history the district court found was the most extensive it had seen; (2) the fact much of the violence was directed at women and Thomas's domestic partners; and (3) Thomas's discharge of a stolen gun during the commission of one of the underlying crimes while on pretrial supervision for the second underlying crime. The district court concluded that none of Thomas's personal characteristics, particularly his long-term drug use, mitigated his culpability or his future dangerousness to society. Finally, in its statement of reasons attached to the judgment, the district court justified the upward departure by reference to the inadequacy of the advisory sentence range in accounting for Thomas's extensive criminal history, U.S.S.G. § 4A1.3, and his discharge of a firearm during an underlying offense, *id.* § 5K2.6. The district court's statement of reasons likewise noted the 180-month sentence was justified as an upward variance to account for the extreme nature of the offense involving the discharge of a firearm, the extensive nature of Thomas's criminal history, and the need to protect the public from further crimes by Thomas. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).

This appeal is before the court on Thomas's counsel's *Anders* brief. Pursuant to *Anders*, counsel may "request permission to withdraw where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). Counsel is required to submit an appellate brief "indicating any potential appealable issues." *Id.* Once notified of counsel's brief, the defendant may then submit additional arguments to this court. *Id.* We "must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous." *Id.* Despite being notified of his entitlement to do so on multiple occasions, Thomas did not file a brief in response to counsel's *Anders* brief. The government declined to file a brief. Thus, our resolution of the case is based on counsel's *Anders* brief and this court's independent review of the record. That independent review demonstrates any potential issue that would be raised on appeal is wholly frivolous.

Counsel asserts they have conscientiously reviewed the record in this case and cannot assert a non-frivolous basis to challenge either the validity of Thomas's convictions or sentence. As counsel correctly recognizes at the outset, the arguments Thomas may raise are significantly narrowed by the appellate waiver in his plea agreement. Thomas specifically waived the right to appeal his guilty plea "and any other aspect of [his] conviction, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues." Regarding his sentence, the waiver bars arguments based on

"the manner in which the sentence is determined" allowing only an appeal challenging the substantive reasonableness of any sentence imposed in excess of the top of the advisory Guidelines range. For that reason, many of the issues identified by counsel on appeal would be barred by the waiver even if they were not frivolous.

According to counsel, Thomas contends he did not know it was possible for the district court to impose consecutive sentences. Even if viewed as a challenge to the substantive reasonableness of his sentence, and thus outside the limitations of the appellate waiver, this argument is frivolous. Thomas's petition to enter a guilty plea and the plea agreement itself specifically note that the district court had discretion to sentence him to the statutory maximum sentence on each count of conviction and to run the sentences consecutively.

Counsel notes that it might be possible to argue Thomas was not provided adequate notice of the possibility of an upward departure. *See* Fed. R. Crim. P. 32(h). Counsel correctly concedes such an argument would be frivolous for two independent and equally dispositive reasons. First, the district court imposed its sentence after concluding it was justified as either an upward departure or upward variance. The notice requirement set out in Rule 32(h) does not apply to variances. *Irizarry v. United States*, 553 U.S. 708, 716 (2008); *United States v. Lymon*, 905 F.3d 1149, 1155 n. 4 (10th Cir. 2018). Thus, any error in failing to provide notice with regard to the departure would be clearly harmless. *United States v. Perez*, 806 F. App'x 725, 728–29 (11th Cir. 2020); *United States v.*

7

*Nelson*, 793 F.3d 202, 206–07 (1st Cir. 2015); *United States v. Peninger*, 456 F. App'x 214, 219 (4th Cir. 2011).  In any event, the PSR specifically provided Thomas notice that he faced the possibility of upward departures at sentencing. Such notice satisfies the requirements of Rule 32(h).  *See* Fed. R. Crim. P. 32(h) ("Before the court may depart from the applicable sentencing range *on a ground not identified for departure either in the presentence report* or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure." (emphasis added)).

Finally, counsel indicates a conscientious review of the record also demonstrates any challenge to the substantive reasonableness of Thomas's 180-month sentence would be frivolous.  This court strongly agrees.  A defendant arguing substantive unreasonableness faces the difficult task of demonstrating the district court's sentencing decision "was an abuse of discretion because it was arbitrary, capricious, whimsical, or manifestly unreasonable."  *United States v. Dunbar*, 718 F.3d 1268, 1282 (10th Cir. 2013).  That is, Thomas must convince this court that the district court's sentencing decision was not "within the range of possible outcomes that the circumstances fairly support."  *United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014) (quotation omitted).  Under this standard, we "uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." *United States v. Gross*, 44 F.4th 1298, 1304 (10th Cir. 2022).

A review of the record leaves no doubt the district court's sentence, although reflecting a substantial upward variance, is reasonable. Importantly, both felon-in-possession convictions involved aggravating factors. As to the first, those factors included the conduct surrounding Thomas's possession of the weapon when he drove into a gas pump while substantially impaired on drugs with a similarly impaired juvenile in the car. As to the second felon-in-possession conviction, Thomas discharged the firearm during a violent physical altercation involving his domestic partner and the domestic partner's son. Regarding Thomas's history and characteristics, the district court emphasized several times the extensive and violent nature of Thomas's criminal history. Indeed, the district court stated it had never seen such an extensive criminal history. Although Thomas's counsel argued Thomas's criminal behavior could be explained by his drug addiction, the district court reasonably chose not to give those arguments much weight:

> But not every drug user chooses to engage in the type of criminal violent behavior that you have. So I do think that we have a much deeper and broader problem than the drug addiction.
>
> Your history reflects from virtually your entire non-adolescent life and including part of your adolescent life that you've chosen crime and violence. And I'm particularly concerned about the behavior. It does seem to have escalated very recently. These incidents for which you were arrested here could have been so much worse.
>
> And even when I look throughout the history, I see so many domestic incidents that involve violence towards women and partners that you have that I find extremely troubling and represent a pattern of criminality that just hasn't been interrupted for your entire life.

9

Considering all the circumstances, there can be no doubt the district court reasonably concluded a 180-month's sentence was necessary to protect the public and reflect the seriousness of Thomas's crimes of conviction and criminal history.

Pursuant to the *Anders* mandate, this court has undertaken an independent review of the entire record in this case. Our review demonstrates that the potential issues raised in counsel's *Anders* brief are undeniably frivolous. Likewise, this court's review of the entire record reveals no other potentially meritorious issues. Accordingly, we **GRANT** counsel's motion to withdraw and **DISMISS** this appeal.

Entered for the Court

Michael R. Murphy
Circuit Judge